**AFROS S.P.A., Plaintiff,**

v.

**KRAUSS–MAFFEI CORPORATION and Krauss-Maffei A.G., Defendants.**

**Civ. A. No. 84–358 MMS.**

United States District Court,
D. Delaware.

Dec. 27, 1985.

John G. Mulford, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., Carl G. Love, William K. West, and Peter W. Gowdey, of Cushman, Darby & Cushman, of counsel, Washington, D.C., for plaintiff.

William D. Bailey, Jr., of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., Robert J. Koch, and Christine Krithades, of counsel, Alexandria, Va., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Afros S.p.A. ("Afros"), in this patent-infringement action alleges defendants Krauss-Maffei A.G. ("KMAG"), a West German corporation, and Krauss-Maffei Corporation ("KMC"), its wholly owned subsidiary, have infringed plaintiff's United States Letters Patent No. 4,332,335 ("the '335 patent").

Defendant KMC, a Delaware corporation, answered the complaint denying any infringement, Dkt. 20, at ¶ 3, and counterclaimed for Afros' alleged infringement of patents 3,706,515 ("the '515 patent") and 3,975,128 ("the '128 patent"). *Id.* ¶¶ 11 & 15.[1]  Before the Court for decision is defendant KMAG's motion to dismiss for lack of *in personam* jurisdiction.[2]

---

1. KMC originally alleged Afros had infringed patent 3,799,199 as well.  *See* Dkt. 20 at 6 ¶ 11.  The parties subsequently stipulated that paragraphs 11 through 20 of the counterclaim be dismissed with prejudice with respect to patent 3,799,199.  Dkt. 40.

2. Defendant KMAG on July 25, 1984, noticed its Motion to Quash Service and to Dismiss.  Dkt.

**Analysis**

■ In the absence of a federal statute authorizing nationwide service of process in patent-infringement actions, a federal court is referred by Rule 4(e) of the Federal Rules of Civil Procedure to the statutes or court rules of the state in which it sits for authorization to exercise *in personam* jurisdiction over a person not an inhabitant or as found within the state. *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295 (3d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 383, 88 L.Ed.2d 338 (1985).

■ In deciding whether this Court may properly exercise *in personam* jurisdiction over KMAG, the first inquiry is whether Delaware would permit its own courts to exercise jurisdiction in this case. If the Court concludes that Delaware would permit jurisdiction, the Court must then ensure that such an exercise of jurisdiction satisfies the due process requirements of *International Shoe. Transportes Aereos De Angola v. Ronair, Inc.,* 544 F.Supp. 858 (D.Del.1982).

Plaintiff claims KMAG is subject to personal jurisdiction in this action pursuant to the provisions of 10 Del.C.Ann. § 3104 (Michie 1974 & 1984 Supp.), which provides in pertinent part:

A court may exercise personal jurisdiction over any nonresident, ... who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; ... [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

Subsection (b) states: "[a]ny person who commits any of the acts hereinafter enumerated [in subsection (c) ] thereby submits himself to the jurisdiction of the Delaware courts...." *Id.* § 3104(b).

Section 3104(c) has been construed broadly so as to confer jurisdiction to the maximum extent permitted by due process. *Speakman Co. v. Harper Buffing Mach. Co.,* 583 F.Supp. 273, 275 (D.Del.1984); *Moore v. Little Giant Indus.,* 513 F.Supp. 1043, 1048 (D.Del.1981), *aff'd,* 681 F.2d 806 (3d Cir.1982); *Fyk v. Canvas Mobiles,* No. 83C–OC–62 (Del.Super. March 20, 1985).

**1. Facts to Support Jurisdiction**

Defendant KMAG is a large West German corporation with five divisions: defense, locomotive transportation, iron foundry products; processing equipment; and plastics. Deposition of Helmut Fehl (April 19, 1985), Dkt. 48 (hereinafter cited as Fehl Dep.), at 7–9; Deposition of Joachim Huwendiek (April 30, 1985), Dkt. 50 (hereinafter cited as Huwendiek Dep.), at 10–11. KMAG has operations in several foreign countries: "daughter companies" in Great Britain, France, Italy, and the United States, and a licensing agreement with a company in Japan. *See* Deposition of Bernhard Nill (April 30, 1985), Dkt. 52 (hereinafter cited as Nill Dep.), at 22–23.

The Plastics Division of KMAG is responsible for extrusion, injection-molding, and urethane equipment. Deposition of Juergen Peter Hingst (April 29, 1985), Dkt. 49 (hereinafter cited as Hingst Dep.), at 8; Deposition of Manfred Peterson (April 29 & 30, 1985), Dkt. 51 (hereinafter cited as Peterson Dep.), at 19; Fehl Dep. at 9.

KMC was incorporated in Delaware in 1966. KMAG has owned 100% of KMC's stock since its inception. KMC's principal place of business has shifted over time; initially it was in New Jersey, Peterson Dep. at 68, and now is in Michigan. *Id.* at 66.

The purpose of KMC is to resell KMAG products and components in the United States. Peterson Dep. at 56, 76. All

11. On March 13, 1985, the summons and complaint were served on KMAG by the Bavarian Ministry of Justice in accordance with the terms of the Hauge Convention. KMAG did not renew its motion to quash service in the motion to dismiss filed on March 13. *See* Fed.R.Civ.P. 12(h)(1).

KMAG products sold in the United States are sold exclusively through KMC, Hingst Dep. at 16, with the exception of certain customized machinery sold directly to customers in the United States by a KMAG employee. *Id.* at 9–11, 16–17. To this end, KMC annually purchases over $5 million from KMAG's plastics division, Hingst Dep. at 17–19, and a like amount from KMAG's process engineering division. Huwendiek Dep. at 22–6. These sales contracts are consummated in Germany; final assembly of parts is done by KMC on arrival in the United States. Deposition of Philip Schneider (April 18, 1985), Dkt. 47 (hereinafter cited as Schneider Dep.), at 52. Any inquiries received by KMAG from potential customers in the United States concerning purchases of extrusion or injection-molding equipment are passed on to KMC. *Id.* at 17. As Peterson stated, "[w]e write them [potential customers in the United States] that our daughter company, Krauss-Maffei Corporation, is the acting arm in the United States." Peterson Dep. at 57. *See also* Schneider Dep. at 72.

The '335 patent that is the subject of plaintiff's complaint describes and claims "mixing heads," which are devices for continuously mixing and ejecting two or more liquid components into a mold for molding plastic articles. Complaint ¶ 5. Defendant KMC admits that it uses and sells in the United States "L-shaped" mixing heads,[3] *see* Complaint ¶ 6, Answer ¶ 6, although it denies this infringes on plaintiff's '335 patent. *See* Complaint ¶ 11, Answer ¶ 11. L-shaped mixing heads are made by KMAG. Peterson Dep. at 26–27.

The '515 and '128 patents that are the subject of KMC's counterclaim describe and claim "RIM mixing heads," which are used in reaction and injection molding machines. Answer ¶¶ 11, 12. These patents were owned by KMAG at all times prior to September 14, 1984. On September 14, 1984, some two months after Afros had filed suit, a top KMAG employee assigned the patents to KMC for one dollar. Peterson Dep. at 64.

**3.** These are also referred to as "UL" heads.

The assignment of the '515 and '128 patents by KMAG to KMC was made without the knowledge of Hingst, the Chief Executive of KMC, Hingst Dep. at 26, and, indeed, was never even presented for approval to KMC's Board of Directors. Fehl Dep. at 30–31. The decision that KMC should counterclaim respecting these patents was made by Manfred Peterson, Hingst Dep. at 27–28, the General Manager of KMAG's urethane machine and production plant, part of KMAG's plastic division. Hingst was merely informed of the decision later, *id.*, since, according to Hingst, all aspects of polyurethane patents are Peterson's responsibility. *Id.* at 28. Peterson confirmed this account, stating that "in general, this type of problems or business activities [sic] belongs to the [plastics machinery] department [of KMAG]. We are running the business as a profit center and therefore it's our power or whatever you want to say." Peterson Dep. at 48.

Peterson retains no firm recollection of the assignment. *Id.* at 72–73. He states he does not recall reading the assignment before signing it; he explained he reads in detail only "something important or very important." *Id.* at 73.

### 2. The Requirements of Due Process

Assuming *arguendo* that KMAG comes within the reach of the Delaware long-arm statute, its relationship with this forum is so attenuated that assertion of *in personam* jurisdiction over KMAG would violate constitutional due process requirements.

█ To subject a defendant to a court's *in personam* jurisdiction, due process requires that the defendant must have certain minimum contacts with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The minimum-contacts test "protects the de-

Schneider Dep. at 33.

fendant against the burdens of litigating in a distant or inconvenient forum" and ensures as well that the State asserting jurisdiction has not encroached on the sovereignty of its sister States within the federal system. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The *World-Wide Volkswagen* court emphasized, however, that the due process clause forbids a state from exercising *in personam* jurisdiction over a "defendant with which the state has no contacts, ties, or relations." 444 U.S. at 294, 100 S.Ct. at 565 (quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160).

■ The only activity conducted by either KMC or KMAG in Delaware is that KMC has been incorporated continuously in Delaware since 1966 and files annual franchise tax reports to the State. Afros makes no allegations that any other corporate activities of any kind are carried on in Delaware by either defendant.

Thus, KMAG has *no* direct contact with Delaware; its only ascertainable "contact" is through its subsidiary, KMC. This indirect relationship does not comply with the due process requirement of minimum contacts.

### 3. Whether KMAG Has Waived Its Objection to In Personam Jurisdiction

■ Plaintiff has stated that the facts establish that the counterclaim filed by KMC was actually the act of KMAG and done for its benefit. As such, plaintiff suggests that KMAG has waived its objection to *in personam* jurisdiction. I disagree.

Although it may be inferred that the assignment of the patents was motivated by this lawsuit, on this record plaintiff has not demonstrated the assignment or the act of KMAG is invalid. Absent such a showing, there is no basis or viable theory advanced which would support a finding that the counterclaim should be considered an act by KMAG, or that the filing of the counterclaim constitutes a waiver by

KMAG of its objection to personal jurisdiction.

Defendant KMAG's motion to dismiss will be granted.