**AFROS S.P.A., Plaintiff,**

v.

**KRAUSS–MAFFEI CORPORATION, Defendant.**

**Civ. A. No. 84–358 MMS.**

United States District Court, D. Delaware.

Nov. 24, 1986.

John G. Mulford of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., of counsel: William K. West, Jr., and Peter W. Gowdey of Cushman, Darby & Cushman, Washington, D.C., for plaintiff.

William D. Bailey, Jr. of Bayard, Handelman and Murdoch, P.A., Wilmington, Del., of counsel: Robert J. Koch, and Christine Krithades, Alexandria, Va., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Afros, S.p.A. ("Afros") has brought suit against Krauss-Maffei Corporation ("KMC"), a Delaware corporation,

alleging infringement of Afros' United States Letters Patent No. 4,332,335. KMC denies any infringement and counterclaims for Afros' alleged infringement of its patents 3,706,515 and 3,975,128. The patents relate to "mixing heads," which allow for the continuous mixing and ejecting of two or more liquid components, utilized in molding plastic articles.[1] Afros' action initially named Krauss-Maffei A.G. ("KMAG"), a German corporation of which KMC is a wholly owned subsidiary, as a defendant. This Court granted KMAG's motion to dismiss for lack of *in personam* jurisdiction on December 27, 1985. 624 F.Supp. 464 (D.Del.1985) ("*Afros I* ").

Afros now moves for an order compelling KMC to produce documents related to the design and development of the UL series mixing heads that are the subject of KMC's patents. KMAG originally developed and patented the devices, but assigned the patents to KMC on September 14, 1984, approximately two months after Afros filed suit. *Id.* at 467. Afros has requested the documents three times, most recently on May 20, 1986, the discovery cut-off date. KMC produced four documents under seal on August 20, 1986, in response to plaintiff's discovery request. Afros maintains, however, that these items do not meet their request because the documents fail to fully describe the dimensions of all UL mixing heads covered by KMC's patents, and do not cover the patents' development in the period from 1972 to 1981.

Plaintiff moves for an order directing KMC to produce documents that are presently in the possession of the non-party parent corporation, KMAG. KMC argues that under Federal Rule of Civil Procedure 34(a) the requested documents are not within its "possession, custody, or control," and therefore fall outside the scope of discoverable material. In resolving the motion, the Court will analyze the meaning of "control" for Rule 34(a) purposes, and then consider whether KMC does control the documents so as to warrant their production.

## I. Analysis

The issues of *in personam* jurisdiction and "control" of documents are related but not identical. *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1144 (N.D.Ill.1979). The fact that a court cannot exercise jurisdiction over a person does not necessarily mean documents in that person's possession are shielded from the reach of Rule 34, which applies only to parties to the litigation. *See, e.g., Compagnie Francaise D'Assurance v. Phillips Petroleum,* 105 F.R.D. 16, 33 (S.D.N.Y. 1984) (documents in possession of third person may be subject to Rule 34). If a party has control over or shares control of documents with a third person, then a court can order production by means of its power over the party litigant. The question then is whether a litigant subject to the jurisdiction of the court has sufficient control over documents in the possession of third parties for Rule 34 purposes.

### A. The Test of Control

In *In re Uranium Antitrust Litigation,* the District Court extensively analyzed the corporate affiliations of four defendants to determine if they had the requisite control over documents possessed by foreign corporations outside the Court's jurisdiction. Two defendants were American subsidiaries of foreign corporations, one was the American parent of a foreign subsidiary, and one foreign party had foreign and domestic subsidiaries. 480 F.Supp. at 1151. Summarized briefly, the key factual issues in determining control were: the parent's ownership share in the subsidiary or affiliated corporation; whether the corporations had interlocking management structures; the degree of control exercised by the parent over the subsidiary's directors, officers, and employees. *Id.* at 1151–53. The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the foreign corporation, but rather that there be close coordination between them. *Id.* at 1153.

---

1. A description of the parties' patented devices can be found at 624 F.Supp. 464, 465–66.

In *Compagnie Francaise,* the District Court considered the relationship between a national company (COFACE) acting as an agent of the French government in insuring export contracts and two French Ministries. "The key to determining whether COFACE is in possession or control of the Ministry documents lies *in the nature of the relationship* between COFACE and the Ministries." 105 F.R.D. at 32 (emphasis added).[2] The Court noted "the apparent incongruity of ordering an agent to compel its principal to turn over documents," *id.,* but determined that COFACE had sufficient control of the documents to permit issuance of a production order.

The courts have considered cases where discovery is sought from a non-party sister corporation or affiliate. In *Alimenta (U.S.A.) v. Anheuser-Busch Co.,* 99 F.R.D. 309 (N.D.Ga.1983), defendant sought documents from the plaintiff's sister corporation in Rotterdam, The Netherlands. The District Court found that the sister corporations had acted "as one" in the transaction, based on the financial arrangements of the sale at issue whereby the American corporation simply charged defendant the price it paid to the foreign sister. *Id.* at 313. *See Perini America, Inc. v. Paper Converting Mach. Co.,* 559 F.Supp. 552, 553 (E.D.Wis.1983) (court ordered production of documents held by foreign sister corporation which was "alter ego" of owner). The fact that two corporations are sisters does not, however, automatically permit an inference of control. *See Pennwalt Corp. v. Plough, Inc.,* 85 F.R.D. 257, 263 (D.Del.1979) (Court refused to order production of the non-party sister corporation's documents absent a showing of identical boards of directors or a deeply intertwined corporate structure).

Courts have also ordered discovery of documents held by another corporation where there is a parent-subsidiary relationship. In *Hubbard v. Rubbermaid, Inc.,* 78 F.R.D. 631 (D.Md.1978), a Title VII case, plaintiff requested documents from two of defendant's wholly owned subsidiaries that were not parties. The District Court ordered discovery on the ground that the parent corporation had complete control of the subsidiary and "[t]he fact that we are dealing with separate corporate entities here is irrelevant." *Id.* at 637. *See Advance Labor Serv., Inc. v. Hartford Accident & Ind. Co.,* 60 F.R.D. 632 (N.D.Ill. 1973) (court granted defendant's motion to compel discovery of a non-party corporation whose shareholders and directors were identical to the plaintiff's). In *Soletanche and Rodio, Inc. v. Brown & Lambrecht Earth Movers, Inc.,* 99 F.R.D. 269 (N.D.Ill. 1983), the District Court, in a patent infringement case, considered defendant's discovery motion directed against the wholly owned American subsidiary of a French corporation. The Court found that the parent corporation was the true interested party, so "[g]iven the identity of interests in the litigation, we feel that this satisfies any showing of control which might be necessary." *Id.* at 272.

■ The "nature of the relationship" between the party over whom the court has jurisdiction and the non-party with possession of the documents will determine whether a motion to compel discovery should be granted. Three factors are of paramount importance in ascertaining this relationship: first, the corporate structure encompassing the different parties; second, the non-party's connection to the transaction at issue; third, to what degree will the non-party receive the benefit of any award in the case.

## 1. Corporate Structures

■ Discovery requests have sought successfully documents held by a foreign parent corporation through a subsidiary, *see In Uranium Antitrust Litigation,* and *Soletanche and Rodio,* or from a foreign principal through its agent. *See Compag-*

---

**2.** The French government held an 85% share in COFACE, and COFACE's contract guaranty was on behalf of the government. This led the Court to determine that COFACE was the government's agent in the transaction at issue, and that the Ministries bore all the risk and would receive any recovery from the litigation. 105 F.R.D. at 33.

*nie Francaise.* The converse has also taken place. *See Rubbermaid, Inc.* and *Advance Labor Serv. Inc.* Parties have attempted to reach documents in the possession of the non-party sister corporations. *See Alimenta (U.S.A.), Pennwalt Corp.,* and *Perini America, Inc.* It is obvious that the particular *form* of the corporate relationship does not govern whether a party controls documents. Whether a subsidiary is wholly or partially owned by the parent, the overlap of directors, officers, and employees, or the financial relationship between the corporations all aid in the analysis of control.

### 2. Connection to Transaction

■ The second factor focuses attention on how the non-party came to be a part of the litigation. In *Alimenta (U.S.A.),* the foreign corporation possessed documents concerning its sale of defective peanuts to its American sister corporation, which in turn sold the goods to the defendant. These documents were relevant to the central issue of the litigation, and the foreign corporation had itself participated in the transaction. 99 F.R.D. at 313. In *In re Uranium Antitrust Litigation,* the foreign corporations were part of an alleged world-wide antitrust scheme, and the documents they held were crucial to the plaintiffs' case. In *Pennwalt Corp.,* on the other hand, the non-party sister corporation had only a tangential relation to the question before the court. The cases illustrate that a non-party's participation in a transaction, and its consequent possession of related documents, must be considered in determining control for Rule 34 purposes.

### 3. Benefit of Award

■ If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession. In *Compagnie Francaise,* the French government, which had indemnified the plaintiff for its loss, would recover any judgment. To deny discovery of documents held by the government would be "unacceptable." 105 F.R.D. at 35. In *Soletanche and Rodio,* an American subsidiary brought a declaratory judgment action on patents held by its parent, which refused to permit discovery of certain documents relating to the validity of its patent. The court determined that the foreign parent would receive the benefit of the litigation, and the American subsidiary was only an instrumentality. 99 F.R.D. at 272. If the nonparty is to receive a benefit from the litigation, that fact along with others must be weighed in determining control for purposes of Rule 34.

### B. Control of KMC

Defendant argues the dismissal of KMAG as a defendant for lack of personal jurisdiction should govern the issue of control under Rule 34. KMC's argument is flawed, however, because the jurisdiction issue rested on a minimum contacts analysis, while the present question requires the Court to analyze the relationship between KMAG and KMC. *See also Compagnie Francaise,* 105 F.R.D. at 33 (distinguishing Rule 19 joinder analysis from Rule 34 control question).

KMC is a wholly owned subsidiary of KMAG, operating as the exclusive seller of KMAG products in the United States. *Afros I,* 624 F.Supp. at 466–67. All product inquiries KMAG receives from potential American customers are directed to the daughter company, which is KMAG's "acting arm in the United States." *Id.* at 467. KMAG also has subsidiaries in the United Kingdom, Italy, and France, with which it has substantially similar relationships.

The operational aspects of these two companies shed light on the Rule 34 control question. The KMC Board of Directors is made up of four members, each of whom is an employee of KMAG. At the time of discovery on this question, three of the Directors, Messrs. Wiehenbrauk and Hingst and Dr. Nill, headed KMAG operating divisions, while the fourth, Dr. Hwendick, was also a member of KMAG's Board

of Directors. Two of the four played prominent roles in the management of KMC.

Mr. Hingst served as President of KMC along with his duties as Chief Executive of KMAG's plastic machinery division; his entire salary was paid by KMAG. Deposition of Juergen Peter Hingst (April 29, 1985), Dkt. 49, at 19 (hereinafter Hingst Dep.). Mr. Wiehenbrauk oversaw the financial affairs of KMC in his position as head of KMAG's finance department and as a Director of KMC. Deposition of Jochen Wiehenbrauk (April 30, 1985), Dkt. 46, at 11–12. Generally, an employee of KMAG's finance department "does the reporting" based on monthly figures supplied by KMC. *Id.* at 13.

The operation of the other European subsidiaries is identical to that of KMC and each has the same Board of Directors. Hingst Dept. at 13. Recent KMC Board of Directors meetings have taken place at KMAG's offices in Munich. Deposition of Helmut Fehl (April 19, 1985), Dkt. 48, at 40.

The assignment of KMAG's mixing head patent rights on September 14, 1984 entailed a nominal payment of one dollar to KMC. The decision to transfer the rights was made by Manfred Peterson, the General Manager of KMAG's urethane section of the plastics division. Neither Mr. Hingst, in his capacity as President of KMC, nor the KMC Board of Directors were informed of or approved the decision. *Afros I,* 624 F.Supp. at 467. Mr. Peterson made the decision to file a counterclaim against Afros, again without informing the principals of KMC. Deposition of Manfred Peterson (April 29, 1985), Dkt. 51, at 35–36; *see* Hingst Dep. at 25–26. Peterson did state that only KMC has the power to settle this litigation. *Id.* at 68–69. It is not clear whether he was simply stating the obvious proposition that only a named party to litigation has the ability to settle. The research and development of KMC's patents took place solely at KMAG. *Id.* at 35, 37.

The four documents defendant delivered to plaintiff in August, 1986, were obtained from KMAG's files. Although defendant labels this production "voluntary," KMAG provided the documents, according to counsel, in the interest of assisting KMC move this case toward trial. Further, KMAG met defendant's counsel's request for the documents "with full cooperation."

The relationship between KMC and KMAG is very close. In addition to being a wholly owned subsidiary, KMC's Board consists of upper echelon KMAG employees who have substantial oversight responsibility in that corporation. Key decisions regarding this litigation, primarily the assignment of patent rights and decision to counterclaim, were made by a KMAG employee with no direct connection to KMC. KMAG has provided documents at the request of KMC, demonstrating that the requested items are within KMC's reach. The intercorporate relationship balances in favor of finding that KMC has control of the requested documents.

KMAG's connection to the patent infringement counter-claim is undeniable. KMAG is responsible for the development of the UL mixing heads, and any question regarding infringement will necessarily reference acts it performed. KMC is primarily the American sales arm of KMAG, even though it now owns the patents. Finally, KMAG would receive a direct benefit from a favorable judgment. KMAG's sales in the United States, through KMC, will be enhanced because it would be rid of a competitor or, if it chose, it could license Afros, thereby increasing the subsidiary's income through royalties. In either event, KMAG benefits.

**II. Conclusion**

█ Upon consideration of the facts detailed above, the Court finds, based on the nature of KMC and KMAG's relationship, that KMC has the requisite control of the documents plaintiff requested in its motion. An order will be entered granting the motion to compel.