SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

Stephenson Equity Company, Plaintiff–Intervenor,

v.

CREDIT BANCORP, LTD., Credit Bancorp, Inc., Richard Jonathan Blech, Thomas Michael Rittweger and Douglas C. Brandon, Defendants.

No. 99 CIV. 11395(RWS).

United States District Court, S.D. New York.

July 28, 2000.

Securities and Exchange Commission, Salt Lake City, UT, by Thomas M. Melton, of counsel, for Plaintiff.

Securities and Exchange Commission, New York City, by Robert Blackburn, of counsel, for Local Counsel.

Wollmuth Maher & Deutsch, New York City, by William A. Maher, Frederick R. Kessler, of counsel, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, by Donald L. Kahl, T. Lane Wilson, of counsel, for Plaintiff–Intervenor.

Fried, Frank, Harris, Shriver & Jacobson, New York City, by Peter L. Simmons, of counsel, for Non–Party Swiss American Securities Inc.

Morrison & Foerster, Attorney for Receiver, New York, By Carl H. Loewenson, Receiver and Fiscal Agent, for Receiver.

## OPINION

SWEET, District Judge.

Plaintiff–Intervenor Stephenson Equity Company ("SECO") moves for an order to compel non-party Swiss American Securities Inc. ("SASI") to produce documents responsive to the January 26 and April 5, 2000 subpoenas duces tecum served upon SASI by SECO pursuant to Rule 45 of the Federal Rules of Civil Procedure. SASI opposes the motion. For the reasons set forth below, the motion will be denied.

### Parties

The parties in this action are set forth in this Court's opinion of March 21, 2000 (the "March 21 Opinion"), familiarity with which is presumed. See Securities and Exch. Comm'n v. Credit Bancorp, 194 F.R.D. 457 (S.D.N.Y.2000).

The entities to which this motion pertains are as follows:

SASI is a registered broker-dealer headquartered in New York.

SECO was at all relevant times a customer of Credit Bancorp, Ltd. ("Credit Bancorp") and is an intervenor in this action.

### Facts and Prior Proceedings

The facts and proceedings leading up to the commencement of this action are set forth in the March 21 Opinion. The facts and proceedings specific to the instant motion are set forth herein.

SASI provides securities brokerage services to clients wishing to trade on United States public markets. Credit Suisse (Zurich) is a Swiss bank. SASI and Credit Suisse (Zurich) are both ultimately owned by the same corporate parent, the Credit Suisse Group. Thus, they are sister corporations within the larger group of affiliated Credit Suisse companies. In addition, Credit Suisse (Zurich) has a trading account with SASI containing numerous securities, including Vintage Petroleum, Inc. ("Vintage Petroleum") stock.

On January 26, 2000, SECO caused a subpoena to be issued to SASI requesting documents related to the defendants in this action and SECO generally as well as documents related to a specific account into which 2,000,000 shares of Vintage Petroleum stock were delivered in June or July 1999, which account is identified in the subpoena as "Credit Bancorp NV # 0835–8569400." SASI responded by letter of February 7, 2000, that it does not have an account for Credit Bancorp, and provided two computer printouts concerning "the security movements of Vantage (sic) Petroleum over the period in question" and "600,000 shares of Vantage (sic) Petroleum being held in a frozen account at Swiss American".

By letter of April 10, 2000, SECO provided certain documents to SASI for the purpose of showing that SASI's account number 95400141 in the name of "Credit Suisse" contains securities obtained by Credit Bancorp from SECO. These documents included: (1) a June 21, 1999 SECO letter to Merrill Lynch authorizing "[d]elivery" of "2,000,000 shares" of Vintage Petroleum stock to "Swiss American Securities Inc., DTC 0012, FFC: Credit Bancorp NV # 0835–856940-0"; (2) a Credit Suisse record for account 95400141 reflecting "REC[IEPT]" from "MERRILL LYNCH" of "2000000" shares of "Vintage Petroleum Inc." shares on "06/25"; and (3) a

Credit Suisse Portfolio Valuation of the account for "Credit Bancorp Ltd. Rubrik A" as of June 30, 1999 showing "600,000 Vintage Petroleum, Inc." shares.

SASI responded by letter of April 14, 2000, that the material provided by SECO "is not sufficient to establish that securities held by ... SASI in an account owned of record by Credit Suisse (Zurich) really contain assets owned by Credit Bancorp and in turn held for the benefit of your client, Stephenson Equity Co." SASI further stated that "[w]ithout speculating, there is no way SASI can assume that shares held in the name of Credit Suisse are, through a series of agency relationships unknown to SASI, really beneficially owned by [SECO]."

In a telephone conversation of May 9, 2000, Peter L. Simmons ("Simmons"), counsel for SASI, told Frederick Kessler ("Kessler"), counsel for SECO, that: SASI maintains an account for Credit Suisse (Zurich) in which the assets of numerous clients are pooled; SASI has no records by which it can identify whose assets are pooled in that account; SASI contacted Credit Suisse (Zurich) by telephone to request information as to whether assets of Credit Bancorp are included in the pooled account, but Credit Suisse (Zurich) refused to provide the information on the basis of Swiss bank privacy laws; and Vintage Petroleum stock in the account has nonetheless been frozen.[1]

On April 5, 2000, SECO caused a second subpoena to be served on SASI requesting sixteen categories of documents relating to the defendants in this action. SASI thereafter served responses and objections to the subpoena. Specifically, SASI refused to produce insurance-related documents; acknowledged that it possessed certain responsive discovery-related court papers and transmittal letters but refused to produce them on the ground that it assumed that SECO already had copies; and responded in relation to many of the other requests that SASI has no responsive documents.

Approximately one month later, in response to a follow-up inquiry by SECO, SASI produced the documents it had previously withheld on the ground that it assumed SECO already had copies. These documents consisted of copies of pleadings and correspondence in this action and a nine-page account statement generated by Credit Suisse[2] in the name of Credit Bancorp.[3] Finally, in a letter dated May 16, 2000, from Simmons to Kessler, SASI stated that it has produced all documents in its possession that are responsive to the April 5 subpoena and is not withholding any materials based on objections previously raised to the subpoena.

The instant motion was filed on May 30, 2000, and oral argument was heard on June 21, 2000, at which time the matter was deemed fully submitted.

### Discussion

#### I. The Standard Under Rule 45

■ Pursuant to Rule 45, a non-party may be required to produce for discovery materials which are in the non-party's "possession, custody, or control." Fed.R.Civ.P. 45(a)(1)(C). Thus, it is not necessary that the materials sought be in the physical possession of the non-party from whom discovery is sought. See id.; see also, e.g., Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984).

"Control" has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand. See Asset Value Fund, Ltd. v. The Care Group, Inc., No. 97 Civ. 1487, 1997 WL 706320, at *9 (S.D.N.Y. Nov.12, 1997); Florentia Contracting Corp. v. Resolution Trust Corp., No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. April 22, 1993); see also Searock, 736 F.2d at 653.[4]

---

**1.** The Vintage Petroleum stock was frozen pursuant to an earlier request by Carl H. Loewenson, Jr., the Receiver in this action.

**2.** The papers refer to an account statement by "Credit Suisse." Presumably this refers specifically to Credit Suisse (Zurich).

**3.** SASI has represented that the only reason it had possession of the account statement was that it was provided to SASI by the Receiver when he asked SASI to freeze assets believed by the Receiver to belong to Credit Bancorp.

**4.** The cases cited here concern the term "control" in the context of Rule 34, which pertains to discovery from parties to the litigation, rather

This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation. *See generally Gerling Int'l Ins. Co. v. Commissioner of Internal Revenue,* 839 F.2d 131, 140–41 (3d Cir.1988) (discussing application of "control" rule in cases involving discovery directed at corporations related as parent and subsidiary and as sister corporations).

Courts have found control by a parent corporation over documents held by its subsidiary, *see, e.g., Hubbard v. Rubbermaid, Inc.,* 78 F.R.D. 631 (D.Md.1978), by a subsidiary corporation over documents held by its parent, *see, e.g., Cooper Indus. v. British Aerospace Inc.,* 102 F.R.D. 918, 919 (S.D.N.Y.1984), and by one sister corporation over documents held by another sister corporation, *see, e.g., Alimenta (U.S.A.) Inc. v. Anheuser–Busch Cos.,* 99 F.R.D. 309, 313 (N.D.Ga.1983). "It is obvious that the particular form of the corporate relationship does not govern whether [a corporation] controls documents." *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127, 131 (D.Del.1986); *see also Gerling,* 839 F.2d at 140 (discussing principles involved in determining control by a subsidiary over documents held by a parent and noting that "[t]he few cases involving sister corporations ... follow the same pattern"); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2210 (1993) (discussing factors considered in determining control in parent-subsidiary situations and noting that " 'sister' corporations ... have also been analyzed with an eye to such considerations").

■ One of the circumstances which warrants a finding of control is where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity. *See Gerling,* 839 F.2d at 140–41 (where "agent-subsidiary can secure documents of the principal-parent to meet its own business needs ... the courts will not permit the agent-subsidiary to deny control for purposes of discovery");

*Camden Iron & Metal v. Marubeni America Corp.,* 138 F.R.D. 438, 441 (D.N.J.1991) (including "demonstrated access to documents in the ordinary course of business" in list of factors to be considered in determining control); *Cooper,* 102 F.R.D. at 919–20 and n. 2 (control by corporate litigant over documents held by parent corporation presumed because access by subsidiary corporation was required in the normal course of business).

■ Finally, the burden is on the party seeking discovery to make a showing that the other party has control over the materials sought. *See United States v. International Union of Petroleum and Industrial Workers,* 870 F.2d 1450, 1452 (9th Cir.1989) (citation omitted); *DeSmeth v. Samsung America, Inc. and Nadja Int'l Trading Corp.,* No. 92 Civ. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb.20, 1998); *Addamax Corp.,* 148 F.R.D. at 465 and n. 3.

## II. *SECO Has Not Shown That SASI Has Control Over The Documents*

### A. *Access By SASI To The Documents In The Regular Course Of Business Would Show Control*

■ As explained above, SASI and Credit Suisse (Zurich) are sister corporations within the larger group of affiliated Credit Suisse companies. In addition, SASI describes Credit Suisse (Zurich) as "a client of SASI's which effectuates securities transactions on behalf of itself and its own clients though its omnibus account with SASI." SASI confirms that the Credit Suisse (Zurich) omnibus account contains Vintage Petroleum shares, but SASI represents that it does not possess any documents referencing or relating specifically to Credit Bancorp or the individual defendants in this action. The issue here is whether SASI nonetheless has control of the documents sought by SECO.

Although SASI provides very little in the way of concrete information as to the nature of its dealings with Credit Suisse (Zurich),

than Rule 45. The scope of discovery under the two rules is coextensive, however, at least with respect to documentary discovery. *See First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 21 (2d Cir.1998); *see also, e.g., Addamax*

*Corp. v. Open Software Found., Inc.,* 148 F.R.D. 462, 468 (D.Mass.1993) (determination of whether "control" exists does not turn on whether entity from which discovery is sought is party or non-party).

including the flow of information between them, SASI represents that in the course of providing this service to Credit Suisse (Zurich) it does not and is not able to obtain information about the identity of the customers of Credit Suisse (Zurich). Instead, SASI states that the omnibus account transactions are conducted on a no-name basis by Credit Suisse (Zurich) and therefore SASI is unable to determine whether Credit Bancorp—or anyone else—is the ultimate beneficial owner of any given securities held in the account or on whose behalf a particular transaction is executed. Therefore, SASI represents that it cannot determine whether any documents relating to the account to which it does have access pertain to the defendants in this action. SASI avers that any discovery requests regarding this matter should be directed is its sister corporation, Credit Suisse (Zurich).[5]

SASI further insists that SECO, in order to make a showing that SASI has control over potentially responsive documents located with Credit Suisse (Zurich), must establish that SASI is the alter ego of the Swiss bank. This argument is misplaced. An alter ego situation may certainly lead to the conclusion that one corporation has control over documents held by the other corporation, whether in the context of a sister relationship, *see, e.g., Perini America Inc. v. Paper Converting Machine Co.,* 559 F.Supp. 552, 553 (E.D.Wis.1983), or a parent-subsidiary relationship, *see, e.g., In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1152–53 (N.D.Ill.1979). However, a showing of control has not been limited to alter ego situations in either context. *See, e.g., Afros,* 113 F.R.D. at 131 (control found where subsidiary corporation was agent of parent in transaction giving rise to suit and was litigating on parent's behalf); *Cooper,* 102 F.R.D. at 919 (control found where subsidiary had access to documents held by parent in ordinary course of business); *Alimenta,* 99 F.R.D. at 313 (control found where litigating corporation acted as agent of sister in trans-

action giving rise to suit and was litigating on sister's behalf).

In this case the ground for finding control, if there is one, would be that SASI in the ordinary course of business has access to the information sought by SECO.[6] There are relatively few cases in this area involving sister corporations, and the Court is not aware of another case in which the basis for finding control by one entity over documents held by a sister corporation is the first entity's access to the documents in the ordinary course of business. There is no reason, however, why control should not be deemed to exist in those circumstances. *Cf. Cooper,* 102 F.R.D. at 919 (control of documents held by corporate parent presumed where subsidiary had access in normal course of business). The problem, however, is that SECO has failed to make a showing that SASI has such access to the documents in question.

### B. *SECO Has Not Made A Showing Of Access To The Documents By SASI In The Ordinary Course Of Business*

SECO, in attempting to show that SASI has control over the documents sought, relies primarily on the contention that "it is inconceivable" that SASI would not have access to these documents in the ordinary course of business. In this vein SECO references such items as an account agreement, account statements, an account application, due diligence reports, correspondence, and transfer instructions, which presumably must be maintained by or accessible to SASI in order to conduct business. SECO cites *Cooper* in support of this argument, wherein the court found it "inconceivable" that airplane service manuals and blueprints would not be accessible to the distributor and servicer of the planes. 102 F.R.D. at 919. The situation here, however, is unlike *Cooper.* While it may be inconceivable that SASI would not maintain or have access to such records for the account as a whole, as explained below it is not inconceivable that SASI would have

---

**5.** Presumably, to the extent any of the documents sought by SECO exist they are at the very least in the possession of or accessible to Credit Suisse (Zurich).

**6.** SECO has not made a showing of control on other grounds, such as an alter ego or other theory.

not have access to information that is identifiably specific to Credit Bancorp.

SECO points to the existence of certain securities regulations which establish record-keeping requirements applicable to broker-dealers such as SASI as further support for the argument that SASI must have access to the documents sought. *See* 17 C.F.R. §§ 240.17a–3, 240.17a–4 (1999) (setting forth extensive record-keeping requirements for regulated brokers and dealers).[7] At first blush, these regulatory requirements do seem to justify compelling discovery from SASI. The difficulty, however, is that in the case of a pooled or omnibus account, such as the one at issue here, it does not appear that broker-dealers are required to maintain separate records as to the ultimate beneficial owner or owners of securities traded in such an account. Thus, the regulations do not controvert SASI's representation that it cannot identify information pertaining specifically to Credit Bancorp but, rather, only has information pertaining to the account as a whole and within which the securities of innumerable—and unidentified—clients of Credit Suisse (Zurich) are traded.

Under the regulations, any "broker or dealer who transacts a business in securities through the medium of [any member of a national securities exchange], and every broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934" is subject to extensive record-keeping requirements. *See* 17 C.F.R. § 240.17a–3(a). Thus, brokers and dealers must maintain for six years (and for the first two years in a readily accessible location), *inter alia*, the following items:

(1) . . . an itemized daily record of all purchases and sales of securities, all receipts and deliveries of securities (including certificate numbers) . . .

---

7. By letter of July 12, 2000, SECO also provided the Court with copies of two agreements between SASI and Credit Suisse (Zurich) pertaining to the Credit Suisse account as support for the argument that SASI—and the account—are subject to these regulations. There is little question, however, that SASI is subject to the regulations, nor has SASI taken that position. SECO also points out that the account agreements state that the account is to be governed by New York law. Therefore, SECO contends that SASI cannot

(3) Ledger accounts (or other records) itemizing separately as to each cash and margin account of every customer and of such member, broker or dealer and partners thereof, all purchases, sales, receipts and deliveries of securities and commodities for such account and all other debits and credits to such account.

(4) Ledgers (or other records) reflecting the following:

(i) Securities in transfer . . . .

(vii) Repurchase and reverse repurchase agreements . . . .

(6) A memorandum of each brokerage order, and of any other instruction, given or received for the purchase or sale of securities, whether executed or unexecuted. Such memorandum shall show the terms and conditions of the order or instructions and of any modification or cancellation thereof, the account for which entered, the time of entry, the price at which executed and, to the extent feasible, the time of execution or cancellation . . .

17 C.F.R. § 240.17a–3(1999).

In addition, the records referred to above must be maintained for certain periods of time. *See* 17 C.F.R. § 240.17a–4(a)(1999). For example, items (1) and (3) listed above must be maintained for not less than six years, the first two years in an easily accessible place, *see* 17 C.F.R. § 240.17a–4(a)(1999), while items (4) and (6) above must be maintained for not less than three years, the first two in an easily accessible place, *see* 17 C.F.R. § 240.17a–4(b)(1) (1999).

With respect to account ownership information, brokers and dealers are required to maintain:

claim that the reason it does not have access to the documents in question is that Swiss secrecy laws forbid Credit Suisse (Zurich) from providing them to SASI. However, although counsel for SASI did reference those laws at oral argument as being one among other reasons for SASI's lack of access to the documents, SASI's position does not appear to hinge on that point. Nor is the result in this opinion based on such laws, the existence and applicability of which has not been demonstrated.

(9) A record in respect of each cash and margin account . . . indicating

    (i) the name and address of the beneficial owner of such account . . . and

    (iii) in the case of a margin account, the signature of such owner;

    *Provided, That, in the case of a joint account or an account of a corporation, such records are required only in respect of the person or persons authorized to transact business for the account.*

17 CFR § 240.17a–3(9) (emphasis added).

The Credit Suisse (Zurich) omnibus account is an "account of a corporation". The problem, then, is that the regulations do not appear to require SASI to maintain records as to the ultimate beneficial owners of securities which are traded in such an account even though there may be any number of ultimate beneficial owners whose securities are contained therein. Instead, under the plain language of the rule, in the case of a corporate account SASI is required only to maintain a record of the person or persons authorized to transact business for the account. This would presumably be a person or persons employed by Credit Suisse (Zurich).

At one time the Securities and Exchange Commission (the "SEC") had proposed amending this provision to permit maintenance of records only as to the person or persons authorized to transact business for a joint or corporation account on condition that "such persons undertake to furnish, at the request of the Commission, the name and address of each beneficial owner of such account." *See Records With Respect To Beneficial Ownership Of Accounts Carried By Brokers and Dealers,* Exchange Act Release No. 34–13149, 1977 WL 18149 (S.E.C.), at *7 (Jan. 10, 1977). The purpose of this proposed amendment was to afford the agency with a greater ability to obtain information regarding the beneficial owner or owners of joint or corporate accounts. *See id.* at *5.[8] Indeed, it was directed precisely at problems confronted in investigating securities law vio-

lations in situations involving securities trading conducted by foreign financial institutions through United States broker-dealers, whether affiliated with those foreign institutions or not. *See id.* at *4; *see also* Peter Q. Noack, Comment, *West German Bank Secrecy: A Barrier To SEC Insider–Trading Investigations,* 20 U.C. Davis L.Rev. 609, 636 (1987) (observing that SEC's proposed amendment would have closed the "loophole enabl[ing] foreign and American investors to use bank secrecy to shield their identity and trading").

The proposed amendment was never implemented, however, and the text of the regulation remained unchanged. The fact that such an amendment was considered but not adopted is a further indication that the regulation does not require maintenance of or access to separate records as to the various beneficial owners whose securities are traded in an omnibus account. Indeed, limitations on the ability to identify the beneficial owners of securities traded in such accounts have been noted in recent case law in this district. *See Securities and Exch. Comm'n v. Certain Purchasers of Call Options of Duracell Int'l, Inc.,* No. 96 Civ. 7017, 1996 WL 559938, at *1 (S.D.N.Y. Oct.2, 1996) (observing in SEC enforcement action that defendants, unidentified purchasers of certain securities, had concealed their identities by trading through foreign financial institutions).

In summary, while SASI is required by regulation to maintain many of the types of records sought by SECO, including but not limited to account statements and transaction records, on this record it cannot be concluded that SASI must maintain or have access to such records on a Credit Bancorp-specific basis. Therefore, SECO has not made a sufficient showing as to SASI's control over the documents SECO seeks. Nor has any authority been cited which would justify compelling disclosure as to the entire Credit Suisse (Zurich) account without regard for whether the particular transactions at issue relate to the defendants in this action.

---

8. Even under the proposed amendment only the SEC would have been entitled to the information and the avenue for obtaining it would not have been through the broker-dealer itself. Rather, the SEC would have had to approach the person(s) authorized to conduct transactions for the account.

*Conclusion*

For the reasons set forth above, the motion to compel by SECO is denied.

It is so ordered.