**UNIDEN AMERICA CORPORATION
and Topp, Inc., Plaintiffs,**

**v.**

**ERICSSON INC., Defendant.**

**No. 1:97CV00021.**

United States District Court,
M.D. North Carolina.

July 31, 1998.

James T. Williams, Jr., Robert James King, III, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for plaintiffs.

Jonathan R. Harkavy, Patterson, Harkavy & Lawrence, Greensboro, NC, Martha A. Geer, Patterson, Harkavy & Lawrence, Raleigh, NC, for defendant.

### ORDER

ELIASON, United States Magistrate Judge.

This matter involves a dispute over the extent of a party's obligation under the discovery rules to obtain information from unrelated third parties. Two matters could not be resolved at the in-court hearing and the Court requested further briefing. The issues are: (1) Has defendant Ericsson, Inc. (Ericsson) used reasonable efforts as defined in Fed.R.Civ.P. 36 to authenticate a letter from a third party not involved in this lawsuit, and (2) does defendant Ericsson have sufficient control, as defined in Fed.R.Civ.P. 34, over its affiliated sister company, Ericsson Mobile Communications AB (Ericsson Mobile), so that Ericsson can be compelled to produce documents in the possession of its sister company.

1. The letter is in response to and denies allegations made against Cellcom by plaintiff Topp for not purchasing Uniden phones manufactured by Ericsson. The apparently significant statement in the letter is this: "One major consideration of our decision not to purchase any Uniden product is *that Ericsson recommended in writing to us not to do so.*" (emphasis added)

## Issue No. 1—Adequacy of Defendant's Response to Request for Admission No. 18

In Request for Admission No. 18, plaintiff Uniden America Corporation (Uniden) asks defendant to admit the authenticity of a May 19, 1996 letter purportedly sent by a nonparty, Oren Most, who is Vice President of Cellcom, to David Topp, President of plaintiff Topp, Inc.[1] Defendant replied that it lacked sufficient information or knowledge to admit or deny the request. Plaintiff correctly points out that Rule 36(a) requires defendant to state that it made a reasonable inquiry when giving that response. It did not make such an inquiry.[2] Because of this deficiency, plaintiff argues defendant violated Rule 36(a) and the Court should deem the admission admitted. In the alternative, plaintiff requests that the Court order defendant Ericsson to make an inquiry into the authenticity of the letter. Defendant replies that the "reasonable inquiry" standard of Rule 36 does not apply to information in the hands of third parties.

The general rules and principles undergirding Rule 36 and in particular pertaining to non-parties were well summarized by the court in *T. Rowe Price Small–Cap Fund, Inc. v. Oppenheimer & Co. Inc.*, 174 F.R.D. 38 (S.D.N.Y.1997):

> Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact....

> In responding to a properly stated request, a party must make "reasonable inquiry" of "information known or readily obtainable by him" that allows him to fairly admit or deny the request. Fed. R.Civ.P. 36(a) Advisory Committee Notes

2. Specifically, Rule 36(a) provides in pertinent part:

> An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

to 1970 amendment.... What constitutes "reasonable inquiry" and what material is "readily obtainable" is a relative matter that depends upon the facts of each case....

... Although, under certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit, such a requirement is far from absolute.... Generally, a "reasonable inquiry" is limited to review and inquiry of those persons and documents that are within the responding party's control....

....

... [A party] is not compelled to be bound by a version of events presented by third parties, particularly where it has asserted that it has reason to believe that those individuals may have interests hostile or adverse to [the party].

*Id.* at 42–44 (citations omitted).

Plaintiff does cite cases in which a party has been required to make inquiry of third parties for Rule 36 admissions. However, in those cases, the third party was not a complete stranger. In *Al–Jundi v. Rockefeller*, 91 F.R.D. 590, 594 (W.D.N.Y.1981), the third party was a co-party in the litigation. And, while inquiry has been required when the third party is an employee or former employee, *Brown v. Arlen Management Corp.*, 663 F.2d 575, 580 (5th Cir.1981), it has been otherwise when the former employees have an adverse interest, *T. Rowe*, 174 F.R.D. 38. Defendant, on the other hand, contends that a party should never be required to make inquiry for Rule 36 purposes from a completely unrelated non-party, as in this case, absent the existence of a sworn deposition from that person as to the matter in question, *citing, T. Rowe,* 174 F.R.D. at 43–44 (collecting cases).

■ The Court finds that a broader obligation better serves the purposes of Rule 36, which is to reduce costs, narrow issues and make for a better trial presentation to the trier of fact. The Court finds that a party must make inquiry of a third party when there is some identity of interest manifested, such as by both being parties to the litigation, a present or prior relationship of mutual concerns, or their active cooperation in the litigation, and when there is no manifest or potential conflict between the party and the third party. Also, if the third party has spoken to the matter in a deposition, a party can be compelled via Rule 36 to admit or deny, that is, to indicate whether it will introduce contrary evidence.

■ In the instant case, plaintiff shows that Oren Most and Cellcom have been cooperating with Ericsson in this litigation and defendant has not shown any conflict between itself and Cellcom so as to make a Rule 36 inquiry unfair.[3] Under these circumstances, defendant Ericsson can be compelled to make inquiry of Oren Most and Cellcom. However, that is not necessary because plaintiff shows that the Executive Vice President of Ericsson, Mr. Torstensson, identified both the letterhead of the disputed letter as Cellcom's and the signature as that of Oren Most. Moreover, during the course of this litigation Mr. Torstensson actually spoke to Mr. Most concerning the letter. Oren Most admitted writing the letter, but disputed its meaning and provided defendant with another letter for use in the litigation.[4]

---

**3.** Defendant Ericsson claims that Cellcom has an interest adverse to it because Cellcom wants to avoid any potential liability to defendant for refusing the phones and may wish to cast blame on Ericsson in order to do so. However, the issue here is not the truthfulness of the letter's contents, but its authenticity. *See* n. 5, *infra.* Ericsson has not shown that Cellcom's interests are sufficiently adverse for the limited purpose of authenticity. Second, other facts show that Cellcom is not a hostile party vis-a-vis Ericsson. *See* n. 4, *infra.*

**4.** In response to interrogatory No. 17, Ericsson stated:

A telephone call took place between Anders Torstensson and Oren Most on a Monday, either March 16, 1998 or March 23, 1998. They discussed whether Oren Most or another representative of Cellcom would be willing to participate in a deposition in this litigation. Mr. Most asked why this would be necessary. Mr. Torstensson replied that the deposition was necessary because of the statement in Mr. Most's letter to Topp, Inc. that he had decided not to buy the Uniden phones because of Ericsson's recommendation. Mr. Most could not believe that he wrote it that way. He told Mr. Torstensson that his decision was related to warranty, pricing, and other commercial mat-

It, therefore, appears that defendant Ericsson already has conducted an inquiry of Mr. Most and determined that he, indeed, wrote a letter to Topp and never denied the letter in question was the one he sent. Consequently, defendant's response of lack of sufficient information is not true. Therefore, the Court orders the admission be deemed admitted.[5]

### Issue No. 2—Under Fed.R.Civ. 34 May Defendant Ericsson be Compelled to Produce Documents Possessed by a Corporate Affiliate

Plaintiff Uniden has requested that defendant Ericsson produce documents in the possession of its sister company, Ericsson Mobile. Defendant contends that it has no right, authority or practical ability to obtain documents from a sister corporation and, therefore, the motion to compel should be denied.

The parties show the Court that Telefonaktievolaget LM Ericsson (Parent) owns 80% of defendant Ericsson and wholly owns Ericsson Mobile. General Electric owns the remaining 20% of Ericsson. Thus, defendant Ericsson and Ericsson Mobile are brother or sister corporations for the most part.

Rule 34 of the Federal Rules of Civil Procedure requires a party to produce documents which are "in the possession, custody or control of the party upon whom the request is served...." When documents are sought from an affiliated corporation, the issue becomes whether those documents are under the control of the party. Defendant suggests that the Court can only issue an order to compel if it finds that the party corporation has a legal right to demand the other corporation's documents, such as when a parent seeks documents from its wholly owned subsidiary, but not its sister corporations. According to defendant, the only other exception arises when the court seeks to prevent fraud such as when two related corporations were both involved in the transaction or one was the alter ego of the other. The Court finds that the definition of "control" under Rule 34 has not been so limited as suggested by defendant.

■■■ In ruling on Rule 34 motions to compel a corporation to produce documents from another corporation, the courts have defined "control" to include both the legal right to control the company and the actual ability. A seminal case in this area is *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127 (D.Del.1986). In deciding the issue of "control" under Rule 34, the Court first examines the legal right of control. "[A] litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent." *American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C.1994) (quoting *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)); *Afros*, 113 F.R.D. at 130 (collecting cases); *Gerling Intern. Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir.1988) (collecting cases).

■■■ In addition to this absolute form of legal control, courts have also found that one corporation controls another in the situation where one is the alter ego of the other corporation. *Afros*, 113 F.R.D. at 130 (collecting cases). In this instance, the court credits substance over form and ignores the separate corporate entities in order to protect against fraud and deceit. In essence, the court decrees legal control based on the actual control arising from the misuse and

---

ters. Mr. Most subsequently sent Mr. Torstensson a letter dated April 5, 1998 stating that Cellcom did not order the CP8000 from Topp Inc. because the phones did not have manufacturer's warranty and/or after sale service.

5. It may be that defendant Ericsson is concerned that authentication of the letter will necessarily mean that the disputed statement in the letter, (*see* nn. 1 & 4), will be admitted for its truthfulness by virtue of the business record exception to the hearsay rule contained in Fed.R.Evid. 803(6). That, however, is a different matter and this ruling deeming the admission admitted with respect to authentication does not foreordain a result concerning hearsay. Rule 803(6) itself requires much more than mere authentication of a document in order to fall within its hearsay exception, not to mention the limits imposed by Fed.R.Evid. 401, *et. seq.*, which plaintiff would have to surmount.

abuse of the corporate form.[6] Such actual control, in fact, is sufficient to impose liability on both corporations, not just the production of records.

The obligation and consequence resulting from a finding of control under Rule 34 is far less than when that decision forms the basis for imposing liability. This fact may account for the willingness of courts to accept · a broader definition of control for Rule 34 purposes. The definition of control under Rule· 34 includes situations well beyond those which would permit a finding of *in personam* jurisdiction or liability based on an alter ego situation. *Afros,* 113 F.R.D. at 129.

The expanded definition of control under Rule 34 was signaled by the Supreme Court's decision in *Societe Internationale v. Rogers,* 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). There, the Supreme Court held that compliance with a Rule 34 request for documents held by a company's Swiss bank was not excused merely because the turnover would violate foreign law. Rule 34 was given broad construction. The Supreme Court made a point of distinguishing the situation before it from actual inability to produce, such as "where documents required by a production order have ceased to exist or have been taken into the actual possession of a third person not controlled by the party ordered to produce, and without that party's *complicity.*" *Id.,* 357 U.S. at 204, 78 S.Ct. 1087 (emphasis added). This language indicates a direction to lower courts to closely examine the actual relationship between two corporations and guard against not just fraud and deceit, but also sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide doc-uments or make discovery of them difficult. Certainly, this broad construction of Rule 34 is consonant with American civil process which puts a premium on disclosure of facts to ascertain the truth as the means of resolving disputes.[7]

■ With this history in mind, there are a number of factors which may be distilled from case law which help to determine when documents in the possession of one corporation may be deemed under control of another corporation. See *Afros,* 113 F.R.D. at 130–31; *Camden Iron and Metal,* 138 F.R.D. at 441–442. These factors focus on the other corporation's actual control or inferred control, including any "complicity" in storing or withholding documents. They include (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation.

For example, subsidiary corporations which are wholly owned by the parent have no right to order the parent corporation to turn over documents. However, because of the ownership situation, there often exists some intermingling of directors, officers, or employees, or business relations. Consequently, the subsidiary may be required to respond to a Rule 34 request which includes the parent company's documents. *E.g., M.L.C., Inc. v. North American Philips Corp.,* 109 F.R.D. 134, 136 (S.D.N.Y.1986) (common counsel had access to documents of

---

**6.** Defendant argues that plaintiff's facts do not show that Ericsson and Ericsson Mobile (1) disregarded corporate entities, (2) have interlocking directorates and share officers, (3) have the same legal counsel, or (4) engaged in other conduct showing disregard of corporate form such as that Ericsson Mobile was involved in the underlying business deal. In this, defendant Ericsson is mostly, but not entirely, correct.

**7.** The same broad definition of control in Rule 34 applies outside the corporate situation when there is not even commonality of ownership. Control has been found in the following situations: (1) When the assignee of rights will benefit because of the litigation, *Compagnie Francaise*

*d'Assurance v. Phillips Petroleum Co.,* 105 F.R.D. 16, 33 (S.D.N.Y.1984); (2) when one party has contractually agreed to assist the other in litigation, *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y.1992) (legal right of cooperation in patent assignment); (3) when the parties' history, association, assignments and transactions together show sufficient mutuality, *Bank of New York v. Meridien BIAO Bank of Tanzania, Ltd.,* 171 F.R.D. 135, 146–47 (S.D.N.Y. 1997); and, (4) when a non-party agrees to produce documents at the request of a party, *Holland Am Merchants Corp. v. Rogers,* 23 F.R.D. 267, 269 (S.D.N.Y.1959).

parent company in a prior litigation and the parent company had supplied documents in the then pending litigation); *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y.1984) (subsidiary distributed and serviced the subject product which was manufactured by the parent); *Camden Iron and Metal*, 138 F.R.D. at 442 (parent played a significant role in setting up the transaction and in benefitting from it); *First Nat. City Bank of N.Y. v. I.R.S.*, 271 F.2d 616, 618 (2d Cir.1959), *cert. denied*, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960) (parent and subsidiary exchanged documents in ordinary course of business).

Sister corporations are subject to the same analysis. If corporate formalities are observed and none of the other factors are present, then documents will not be deemed under control of a sister corporation. On the other hand, if the factors are present, then the inference of control is found. *Afros*, 113 F.R.D. at 130 (collecting cases); *Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.*, 155 F.R.D. 626, 628 (N.D.Ind.1993) (two parent corporations, neither of which owns a majority still would benefit from the lawsuit).

■ Plaintiff presents the following information to show that defendant Ericsson has a close relationship with Ericsson Mobile and other parent affiliates. The companies work together coordinating sales efforts by dividing up the world market into territories. Ericsson's Executive Vice President reports not only to Ericsson's CEO, but also to Ericsson Mobile's General Manager and Vice President, who is also considered his boss. This line of authority arises because of an agreement between Ericsson and Ericsson Mobile ordered by the parent. Ericsson and Ericsson Mobile share information regularly, document requests are not refused, and they are part of the same internal e-mail system. The parent company has power over both companies, including the power to make Ericsson Mobile provide information. In the instant litigation, Ericsson Mobile has given documents and affidavits to defendant to assist defendant in opposing plaintiffs. Furthermore, plaintiff alleges that Ericsson Mobile was not a disinterested bystander in regard to the instant transaction because the companies agreed to divide the world market and, therefore, have input in the alleged decisions having a purpose to prevent sales by wholesalers, such as plaintiffs, in Israel that would compete with Ericsson Mobile.

Applying these facts to the indicia of control and complicity factors, the Court finds in the instant case that the two corporations are sister corporations, so there is some relationship between them. It is also clear that the parent corporation actually exerts control over both sister corporations, as opposed to their being run as completely separate, independent entities. There is some exchange of officers, to the extent that the officer of Ericsson Mobile has some control over an officer of Ericsson. Also, documents are exchanged in the ordinary course of business and have been exchanged in this instant transaction to the benefit of defendant Ericsson. Moreover, although not directly involved in the underlying transaction, there is an indication that defendant Ericsson Mobile had more than a passing interest in the sales in question, inasmuch as the plaintiffs were trying to sell cell phones within the territory allotted to Ericsson Mobile. These facts are sufficient to find that defendant Ericsson has Rule 34 control over documents possessed by Ericsson Mobile. Therefore, the Court will compel defendant Ericsson to obtain documents from Ericsson Mobile.

The granting of the motion to compel a party to obtain documents from a non-party raises two additional issues. The first concerns the scope of the request for documents sought from a third party where there is not actual legal control or an alter ego situation. When the order compelling documents is not based on actual control, but on the inferred control and complicity prong, the court will more likely tie the scope of the request to the extent of the complicity. This should help regulate concerns over unfairness and burdensomeness when actual legal ability to control is not present. Here, the evidence shows a collaboration between Ericsson and Ericsson Mobile that is based on a general shared interest in the underlying business transaction and specific help in this litigation. There is also general collaboration of business interests and sharing of documents as

directed by the parent. Because the complicity is rather extensive, the discovery can likewise be more expansive.

In the instant case, there is no indication that defendant Ericsson has even made a request for these documents from Ericsson Mobile. That will be the starting place. The Court does not have the exact discovery requests which were limited by plaintiff. The Court instructs the parties to attempt to negotiate a limited discovery request for defendant Ericsson to make on Ericsson Mobile with respect to these documents.[8]

The second issue arising from granting the motion to compel concerns sanctions for non-compliance. The Supreme Court in *Societe Internationale*, 357 U.S. 197, 208, 78 S.Ct. 1087, made clear that if sanctions are imposed, it must be under Fed.R.Civ.P. 37. Failing to comply with the court's order constitutes a violation of Rule 37. *Id.* While inability to comply must be taken into account in assessing the sanction of dismissal, even inability does not preclude lesser sanctions, such as adverse inferences or exclusion of evidence. *Id.* at 212–213, 78 S.Ct. 1087. In this case, Ericsson Mobile's refusal to produce documents will not necessarily absolve defendant Ericsson and free it from the threat of any sanction.

**IT IS THEREFORE ORDERED** that plaintiff Uniden America Corporation's motion to compel defendant Ericsson, Inc. to fully respond to Admission No. 18 (docket no. 36) is granted, and for the reasons stated in this Order, it is hereby deemed that defendant admits the authenticity of a May 19, 1996 letter from Oren Most of Cellcom to Mr. David Topp, President of plaintiff Topp, Inc., per Request for Admission No. 18.

**IT IS FURTHER ORDERED** that plaintiff Uniden America Corporation's motion to compel defendant Ericsson, Inc. to seek records from its sister company, Ericsson Mobile Communications AB, (docket no. 36) is granted, but the parties shall immediately attempt to agree on a limited production of documents which defendant Ericsson, Inc. shall request from its sister company. Should they fail to reach agreement within ten days, the parties should set up a telephone conference with the undersigned to resolve the dispute.

---

8. Defendant objects that the discovery request is not just limited to contacts between Ericsson and Uniden, but rather includes requests for all communications with Israel and all complaints regarding overheating of the cell phone at issue. As to that issue, the Court will need more information concerning why defendant Ericsson has not been able to supply that information and the burdensomeness to non-party Ericsson Mobile.

A finding of Rule 34 control does not entitle a party to conduct full discovery of a non-party through a party. Rather, its only purpose is to make sure that documents which normally would be available to a party for its use will be available to the party's opponent in the lawsuit. Therefore, in determining the extent of a Rule 34 order to compel, the Court will look to see the adequacy of the party's response with its own records and the need for and importance of the third-party documents in relation to the issues of the case.