SUPER FILM OF AMERICA,
INC., Plaintiff,

v.

UCB FILMS, INC., Defendant,

v.

Super Film Sanayi Ve Ticaret A.S.,
Counterclaim–Defendant.

No. 02–4146–SAC.

United States District Court,
D. Kansas.

Feb. 9, 2004.

Arthur E. Palmer, Marta Fisher Linenberger, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff.

Chelsi K. Hayden, David R. Erickson, Jason E. Pepe, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendant.

### *ORDER*

SEBELIUS, United States Magistrate Judge.

This matter comes before the court upon defendant's Motion to Compel discovery responses. (Doc. 43) Defendant moves the Court for an order compelling the plaintiff to produce documents within plaintiff's possession and control, documents within the possession of the counterclaim defendant, electronic versions of various documents, and documents and materials relied upon by the plaintiff's expert, Turgut Selbasti. Plaintiff opposes the motion on the grounds that it has produced all the documents it could or would be required to produce. For the reasons stated below, defendant's Motion to Compel is granted in part and denied in part.

## I. Relevant Factual Background

Plaintiff Super Film of America, Inc. ("Super Film America" or "SFA") filed the instant suit against defendant UCB Films, Inc. ("UCB") in the District Court of Shawnee County, Kansas, alleging that defendant breached a contract for the sale of goods when it failed to pay $115,821.20 for certain transparent film delivered to the defendant. The film in question was manufactured by Super Film Sanayi ve Ticaret A.S. ("Super Film Turkey" or "SFT") and shipped directly to UCB. SFA negotiated the sale and acted as SFT's representative in the United States. Defendant removed the action to federal court and counterclaimed against the plaintiff, alleging that the film delivered to UCB was defective.

On August 22, 2003, UCB served twenty-two discrete requests for production of documents on SFA. (Doc. 28). In response to a number of those requests, SFA took the position SFT might have some of the requested documents but SFA was not obligated to produce documents in the possession of SFT. (Doc. 32). On November 3, 2003, UCB filed the instant motion to compel document production. On December 1, 2003, SFA supplemented its responses to UCB's requests for production (Doc. 50). On December 4, 2003, SFA filed its Response and Memorandum in Opposition to Defendant's Motion to Compel, urging the court to deny the defendant's motion. (Doc. 54). On December 17, 2003, UCB filed its Reply Memorandum in Support of its Motion to Compel. (Doc. 57).

On January 26, 2004, the court entered an Order granting UCB leave to amend its counterclaims to join SFT as a counterclaim defendant. (Doc. 60). On January 27, 2004, UCB filed its Amended Answer to Plaintiff's Complaint and First Amended Counterclaim, adding SFT as a counterclaim defendant. (Doc. 61).

## II. Discussion

### A. Standards

Federal Rule of Civil Procedure 26(b)(1) provides that the "parties may obtain discovery regarding any matter, not privileged,

that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[1] The 2000 amendments to Fed.R.Civ.P. 26 changed the scope of the disclosure obligation from "the subject matter involved in the pending action" to "the claim or defense of any party." Therefore, a request for discovery will be considered relevant under the amended rule if there is any possibility that the information sought may be relevant to a "claim or defense of any party."[2]

■ "When the relevancy of propounded discovery is not apparent, ... its proponent has the burden to show the discovery relevant."[3] If, however, the discovery sought appears relevant, the party resisting discovery can show lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under amended Fed.R.Civ.P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[4] Similarly, a party objecting to discovery on the basis of over-breadth must substantiate its objection, unless the request appears overly broad on its face.[5] In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested

discovery is unduly burdensome. "This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[6]

■ Under Fed.R.Civ.P. 34(a), a party may be required to produce relevant documents and tangible things that are within its "possession, custody or control." "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents."[7] Therefore, Rule 34(a) .enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained "any right or ability to influence the person in whose possession the documents lie."[8]

■ "Ordinarily, a sworn statement that a party has no more documents in its possession, custody or control is sufficient to satisfy the party's obligation to respond to a request for production of documents."[9] However, if the documents sought are known to have been in the party's possession, custody, or control, it would not suffice for that party to simply disavow their existence without adequately explaining the disposition of the documents. Without such an explanation, the requesting party would be unable to "determine whether to search elsewhere, or whether the only existing copies were destroyed,

1.  Fed.R.Civ.P. 26(b)(1).

2.  *Bryant v. Farmers Insurance Company, Inc.*, 2002 WL 1796045, at *1–2, 2002 U.S. Dist. LEXIS 14344, at *4–5 (D.Kan. July 31, 2002); *see also Hill v. Dillard's Inc.*, 2001 WL 1718367, at *2, 2002 U.S. Dist. LEXIS 950, at *7 (D.Kan. Oct. 9, 2001).

3.  *Bryant*, 2002 WL 1796045 at *2, 2002 U.S. Dist. LEXIS 14344 at *5–6; *see also Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D.Kan.1996).

4.  *Scott v. Leavenworth Unified Sch. Dist.*, 190 F.R.D. 583, 585 (D.Kan.1999), and *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan.1999). Despite the change in Fed. R.Civ.P. 26(b)(1), which was amended in 2000, the standard enunciated in *Scott* and *Etienne* continues to apply. *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 n. 7 (D.Kan.2001).

5.  *Etienne*, 185 F.R.D. at 656.

6.  *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan.2002).

7.  *Comeau v. Rupp*, 810 F.Supp. 1127, 1166 (D.Kan.1992); *see also McCoo .v. Denny's, Inc.*, 192 F.R.D. 675, 692 (D.Kan.2000); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D.Kan.1996).

8.  *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mutual Insurance Group, et al.*, 2003 WL 21659662, *2, 2003 U.S. Dist LEXIS 12160, *5–6 (D.Kan. June 4, 2003).

9.  *Lone Star Steakhouse & Saloon, Inc.*, 2003 WL 21659662 at *2, 2003 U.S. Dist. LEXIS 12160 at *6.

thus making further search futile." [10]

### B. Analysis

In its memorandum in support of the motion to compel, UCB identifies four discrete categories of documents and materials whose production it seeks to compel:

1. Documents that are in Super Film America's possession and control;

2. Documents that are in Super Film Turkey's possession, but that are within Super Film America's control;

3. Electronic versions of documents, e-mails, databases, and spreadsheets; and

4. Documents and materials relied upon by Super Film America's expert, Turgut Selbasti, who also happens to be an employee of Super Film Turkey.[11]

Based on the parties' representation, the court finds that they have attempted to resolve this dispute without court intervention in compliance with the local rules. Because these efforts appear to have failed, the court will now evaluate the defendant's motion with respect to each of the categories set forth above.

### 1. Documents within SFA's possession.

■ UCB claims that during their depositions, Peter Ladas, SFA's Director of Sales, and Fatih Basel, SFA's President, testified that they possessed but had not produced many documents requested by UCB in its First Request for Production. In its response to the instant motion, SFA states that it has produced all requested documents, either in the original production or through its December 1, 2003 supplementation, and has "nothing further in its possession, custody or control which is responsive to the requests." In its reply, UCB states that SFA has not produced the following categories of documents:

- For the last three years, income statements, balance sheets, accounts payable,

accounts receivable, and supporting ledgers;

- Mr. Basel's correspondence to Mr. Selbasti requesting him to prepare his expert disclosure or expert opinions;

- The complete e-mail associated with document SFA00034, which is an excerpt of an e-mail. It indicates that it is the second page of a two-page document;

- Mr. Ladas's calendar; and

- The "many documents not specific to UCB" that talk about polypropylene and product codes that Mr. Ladas described in his deposition.[12]

All of the documents described above appear to have, at least at one point, been in the possession, custody or control of SFA. For example, it is clear that Mr. Ladas would possess his own calendar. Similarly, the correspondence between Mr. Basel and Mr. Selbasti would normally be found in the possession, control, or custody of the two corresponding individuals—Messrs. Basel and Selbasti. As noted above, Fed.R.Civ.P. 26(b)(1) permits parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. The court finds that all the documents identified on pages 4 and 5 of UCB Film's Reply Memorandum in Support of its Motion to Compel are relevant to the claims and defenses of the parties in this action and therefore they must be produced by SFA. SFA shall produce these documents to UCB within thirty (30) days of the date of this Order. To the extent the documents in question are no longer in SFA's possession, custody, or control, SFA is hereby directed to explain, in detail and in writing, to defendant UCB the disposition of these documents.

### 2. Documents within SFT's possession.

■ Defendant UCB next argues that the court should order production of documents within the possession of SFT. SFA opposes such production because it claims it does not

---

**10.** *Lone Star Steakhouse,* 2003 WL 21659662 at *2–3, 2003 U.S. Dist. Lexis at *8.

**11.** UCB Film's Memorandum in Support of its Motion to Compel, p. 8. (Doc. 44).

**12.** UCB Film's Reply Memorandum in Support of its Motion to Compel, pp. 4–5 (Doc. 57).

have the control required under Rule 34(a) over the documents possessed by SFT and, therefore, cannot be compelled to produce them. The documents UCB contends have not been produced and for which production is sought include the following categories of documents:

- Super Film Turkey's income statements, ledgers, balance sheets, accounts payable, accounts receivable;
- Polypropylene product code books and CD Roms;
- The results of Mr. Selbasti's testing or measurement and his report memorializing the results and analysis of his technical inspection;
- Process control documents relating to the raw materials and process used to manufacture the BOPP at issue in this case and in earlier shipments, including the written production protocols for manufacturing the polypropylene film;
- Correspondence between Super Film Turkey and Super Film America relating to the polypropylene;
- Documents exchanged between UCB Films and Super Film Turkey; and
- Electronic versions of all documents produced.[13]

To order SFA to produce documents in the possession of SFT, the court must determine that SFA has the right, authority, or ability to obtain the requested documents.[14] Only then can the court find that SFA controls these documents within the meaning of Fed. R.Civ.P. 34. SFA claims that it has no ability to produce documents beyond those it has already produced to the defendant.

UCB argues that control should be implied in this case because (1) there is "significant overlap" in the structure of both companies due to the sharing of company employees, (2) SFT labels SFA its "USA Sales Office" and "USA Liaison Office," (3) an exclusivity arrangement prohibits SFA from selling poly-

propylene not manufactured by SFT, (4) the payment flow between SFT and SFA suggests that SFA is a sales and accounts receivables department for SFT's transactions in the U.S., and (5) SFA has, in the past, held itself out to be a subsidiary of the Sanko Group of Companies, which is the parent group of SFT.

In support of its motion to compel, UCB has presented evidence that SFT was intimately involved in the transaction giving rise to the dispute in this case. SFT entered into a contract with UCB, identifying UCB as the "customer" for approximately 20,000 lbs of polypropylene film.[15] SFT, not SFA, directly communicated with UCB about the terms upon which it would sell and deliver the film. SFT, not SFA, set the terms of contract, including the prices, for the film orders. SFT, not SFA, shipped the film directly to UCB. When the problem with the quality of the film arose, SFT sent its employees, Mr. Egeli and Mr. Selbasti, to investigate UCB's complaint at its Tecumseh facility. Finally, it appears that SFT has not yet been paid for the film it delivered to UCB and, therefore, stands to benefit from this collection action filed by SFA.

In its response, SFA argues that it has no ability to obtain SFT documents and there is no "inherent relationship" between the two companies that would justify a finding of control under Fed.R.Civ.P. 34(a). SFA states that Mr. Basel owns 100% of SFA's stock and there is no overlapping between SFT and SFA management or ownership. As such, SFA now claims it is a distinct legal entity, not affiliated with SFT. Plaintiff suggests that the only relationship between the two companies is a contractual one of supplier/manufacturer (SFT) and distributor (SFA).

The party seeking production of documents bears the burden of proving that the opposing party has the control required under Fed.R.Civ.P. 34(a).[16] This showing may

---

13. UCB Film's Reply Memorandum in Support of its Motion to Compel, pp. 7–8 (Doc. 57).

14. *Comeau*, 810 F.Supp. at 1166.

15. Order Confirmation, Exhibit 5 to UCB Film's Memorandum in Support of its Motion to Compel. (Doc. 44).

16. *Norman v. Young*, 422 F.2d 470, 472 (10th Cir.1970).

be difficult to make where the discovery sought is in the hands of a party other than the party to whom the request is addressed.[17] However, "it is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request."[18] Absent such expanded scope of production, a third party with a substantial interest in the litigation may be allowed to frustrate the rules of discovery to the disadvantage of the party seeking production and, ultimately, of the court. The purposes of discovery in the federal courts are to "disclose the real points of dispute between the parties and to afford an adequate factual basis in preparation for trial."[19] To further these purposes, the federal courts accord a "broad and liberal treatment" to the rules of discovery.[20]

Control may be established where the corporations in question share a common ownership or management structure.[21] Courts have also found one corporation to control another where one is the alter ego of the other corporation.[22] To find control in that situation, the court may credit substance over form and ignore the separate corporate entities "in order to protect against fraud and deceit."[23]

The broad definition of control under Fed. R.Civ.P. 34 was signaled by the Supreme Court in *Société Internationale v. Rogers*, where the Court held that compliance with a Rule 34 request for a party's documents held by the party's Swiss bank was not excused merely because the turnover of such documents would violate foreign law.[24] The Supreme Court distinguished between the situation before it from an actual inability to produce "where documents required by a production order have ceased to exist or have been taken into the actual possession of a third person not controlled by the party ordered to produce, and without the party's complicity."[25] "This language indicates a direction to the lower courts to closely examine the actual relationship between the two corporations and guard against not just fraud and deceit, but also sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult."[26] The broad construction of Fed. R.Civ.P. 34 conforms with the American civil process, which "puts a premium on disclosure of facts to ascertain the truth as the means of resolving disputes."[27]

Following the Supreme Court lead,[28] the scope of control analysis under Rule 34 has resulted in lower court decisions ordering production where (1) the assignee of rights

17. For the purpose of discussing the instant motion to compel, the court will refer to SFT as a "third party" because, although it has now been joined in the litigation as a counterclaim defendant, it was not a party to the lawsuit when this motion was filed and is not a respondent to the instant motion to compel. UCB has since amended its answer and counterclaims to include SFT as a counterclaim defendant. (Doc. 61).

18. *Compagnie Française d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33 (S.D.N.Y.1984).

19. *Alimenta v. Anheuser–Busch Cos., Inc.*, 99 F.R.D. 309, 312 (N.D.Ga.1983).

20. *Alimenta*, 99 F.R.D. at 312, citing *Hickman v. Taylor*, 329 U.S. 495, 506, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

21. *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127 (D.Del.1986) (A wholly-owned subsidiary ordered to produce documents in possession of its non-party parent corporation.).

22. *Perini America, Inc. v. Paper Converting Mach. Co.*, 559 F.Supp. 552, 553 (E.D.Wis.1983) (Court ordered production of documents held by foreign sister corporation which was the "alter ego" of the owner.).

23. *Uniden America Corp., et al. v. Ericsson, Inc.*, 181 F.R.D. 302, 305 (M.D.N.C.1998).

24. 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

25. *Id.*

26. *Uniden America Corp.*, 181 F.R.D. at 306.

27. *Id.*

28. *Société Internationale v. Rogers*, 357 U.S. 197, 206, 78 S.Ct. 1087, 2 L.Ed.2d 1255 ("Rule 34 is sufficiently flexible to be adapted to the exigencies of particular litigation.").

will benefit from the litigation,[29] (2) one party has contractually agreed to assist the other in litigation,[30] (3) the parties' history, association, and assignments and transactions together show sufficient mutuality,[31] and (4) non-party agrees to produce documents at the request of a party.[32] Among the factors used by the courts to determine whether one corporation may be deemed under control of another corporation are: "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (3) involvement of the non-party corporation in the litigation."[33] "These factors focus on the other corporation's actual control or inferred control, including any 'complicity' in the storing or withholding documents."[34]

The court must review UCB's motion to compel production of documents in SFT's possession in light of the expanded definition of control under Fed.R.Civ.P. 34 outlined above. The evidence suggesting that SFT and SFA are related companies is not overwhelming. With the exception of a past, apparently erroneous, representation that SFA is a subsidiary of Sanko, SFT's parent, and the statement by the plaintiff's counsel that one of its expert witnesses, Turgut Selbasti, is an employee of a "related" company, SFT, the parties do not contend that SFA is other than wholly-owned by Mr. Fatih Basel. There does not appear to be any ownership of SFA by SFT or its parent corporation, Sanko Group of Companies. Therefore, the court must look to the additional factors listed above to determine whether SFA may be deemed to control SFT's documents.

The court finds that UCB has sufficiently demonstrated a commonality of interest between SFT and SFA to impute control. The contract for the delivery of the film at issue was between SFT and UCB. SFT shipped the film directly to UCB. At the request of SFA, SFT sent its employees to UCB facilities to investigate UCB complaints. SFT did not charge SFA for the use of its employees or for any tests conducted or reports prepared as a result of the investigation. One of SFT's employees, Mr. Selbasti, is assisting SFA as an expert in the preparation of this case for trial. Once again, SFT is not charging SFA for Mr. Selbasti's time. Despite SFA's claim that *it* purchased the film at issue from SFT and then resold it to UCB, SFT has not yet been paid for the film it delivered to UCB. Because SFT has not been compensated for the film delivered to UCB, it will derive a substantial benefit from this litigation if SFA prevails. Furthermore, following this court's January 27, 2004 ruling, UCB has amended its Answer and Counterclaims to include SFT as a counterclaim defendant. In its amended counterclaims, UCB asserts claims of breach of contract, breach of express warranty, breach of implied warranty of merchantability, and fraud against both SFA and SFT. This amendment to the pleadings further underscores the substantial involvement of SFT in this litigation.

SFT has chosen to conduct its business in America through its distributor, SFA. Following a dispute regarding certain polypropylene film delivered to UCB, SFA brought the instant collection action. SFA would have the court believe that this action was not brought on behalf of SFT even though the evidence presented by UCB in support of this motion to compel clearly shows that SFA did not derive profit from *any* sale of SFT's

**29.** *Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968) (Assignee of a patent ordered to produce documents where the assignee claimed it was not a party to an action.).

**30.** *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525–26 (S.D.N.Y.1992) (Patent owner ordered to produce files held by its licensee's agents.).

**31.** *Bank of New York v. Meridien BIAO Bank of Tanzania, Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y.

1997) (Defendant ordered to produce documents in the possession of its co-defendant's successor-in-interest, who was not a party to the action.).

**32.** *Holland American Merchants Corp. v. Rogers*, 23 F.R.D. 267, 269 (S.D.N.Y.1959) (Production ordered because agreement by third party implied existence of control).

**33.** *Uniden America Corp.*, 181 F.R.D. at 306.

**34.** *Id.*

polypropylene made by SFA in the United States. During his deposition, Mr. Basel testified that the price SFA "paid" for the film it purchased from SFT was the same price it charged its customers in the US.[35] In fact, Mr. Basel testified that SFA's only income was in the form of a monthly fee paid to it by SFT. It appears, therefore, that the only party to benefit financially, if successful, from this litigation is SFT, not SFA.

The court finds that SFA and SFT share a commonality of interest sufficient to conclude that the defendant has established the control requirement of Rule 34 necessary to compel production of additional documents. Despite SFA's assertions that the sale at issue involved two separate transactions—a sale by SFT to SFA and a sale by SFA to UCB—the evidence presented suggests that the sale was, in fact, one transaction and the two Super Film companies acted "as one" to effect it. SFT holds documents which the defendant has shown to be relevant to the central issue in this litigation—the quality of polypropylene film. Having acted so closely together with SFT in the course of the transaction, SFA cannot now assert that it does not control the very same documents that were used in the sale and in the subsequent investigation of the complaints by UCB.

Therefore, the court orders SFA to produce categories of documents set forth on page 7 of this Order and listed in UCB Film's Reply Memorandum in Support of its Motion to Compel that may be in the possession of SFT but are hereby deemed to be in control of SFA. SFA shall produce such documents to UCB within thirty (30) days of the date of this Order.

UCB also seeks a court order compelling the production of unredacted versions of certain manufacturing documents.[36] UCB argues that any objections Super Film Turkey may have on the basis of protecting against disclosure of proprietary information should be overruled because a protective order entered in this case will guard against any improper disclosure of such proprietary information. The court agrees with UCB and orders SFA to produce to UCB previously redacted portions of certain manufacturing documents within thirty (30) days of the date of this Order.

### 3. Electronic versions of documents.

■ UCB seeks discovery of electronic versions of e-mail, documents, databases and spreadsheets that fall within the scope of Fed.R.Civ.P. 26 or UCB's document requests.[37] UCB has made available to SFA non-archived electronic versions of e-mail, documents and spreadsheets and has attempted to reach a stipulation regarding the scope of the parties' obligations to produce electronic discovery.

In its response to the motion to compel, SFA states that it has attempted to provide electronic copies of the documents requested within its "knowledge or expertise"[38] of how to retrieve such documents from the company's two computers. SFA argues that it does not have the expertise to recover any further electronic documents and the court's order requiring such production would be unduly burdensome. As an alternative to a court order compelling production, SFA proposes to make its two computers available to UCB technicians to inspect and make copies of any responsive electronic files or documents. UCB rejects SFA's offer as unreasonable because it would shift the burden and expense of discovery of electronic documents to UCB and would limit UCB's ability to discover documents and files located on other computers that were accessed by SFA computers and that may contain relevant and responsive data.

Fed.R.Civ.P. 26(a)(1)(B) requires a party to provide a "copy of, or a description by

---

**35.** Videotaped Deposition of Steven Fatih Basel, at 200:4–204:17, Exhibit 9 to UCB Film's Memorandum in Support of its Motion to Compel (Doc. 44).

**36.** UCB Film's Reply Memorandum in Support of its Motion to Compel, pp. 8–10 (doc. 57).

**37.** UCB Film's Memorandum in Support of Motion to Compel, p. 20 (Doc. 44); *see also* Exhibit F to defendant's Reply Memorandum in Support of its Motion to Compel (Doc. 57).

**38.** Plaintiff's Response and Memorandum in Opposition to Defendant's Motion to Compel, p. 6 (Doc. 54).

category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses." More specifically, Rule 26(a)(1)(B) disclosures should "describe and categorize, to the extent identified during the initial investigation, the nature and location of potentially relevant documents and records, including *computerized data and other electronically-recorded information...*"[39] "Computerized data and other electronically-recorded information includes, but is not limited to: voice mail messages and files, back-up voice mail files, e-mail messages and files, backup e-mail files, deleted e-mails, data files, program files, backup and archival tapes, temporary files, system history files, web site information stored in textual, graphical or audio format, web site log files, cache files, cookies, and other electronically-recorded information."[40] Furthermore, the disclosing party should take "reasonable steps to ensure that it discloses any back-up copies or files or archival tapes that will provide information about any 'deleted' electronic data."[41]

The court finds SFA's conclusory contention that it does not have the expertise to retrieve such electronic data to be inadequate. Further, the court cannot relieve a party of its discovery obligations based simply on that party's unsupported assertion that such obligations are unduly burdensome. As the court in *Black & Veatch Int'l. Co. v. Foster Wheeler Energy Co.* explained, the party opposing electronic discovery on the grounds of undue burden must "provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure which would be required to produce the requested documents."[42] SFA has not made this requisite showing. Be-

yond conclusory statements, no information has been provided by plaintiff to support its contention that compliance with defendant's relevant discovery requests would be unduly burdensome. The court must overrule plaintiff's objections. Furthermore, the court agrees with the defendant that allowing SFA to satisfy its electronic discovery obligations by simply turning over its two computers to UCB for inspection would unfairly shift the burden and expense of discovery to UCB and could potentially result in relevant and otherwise discoverable information being shielded from UCB.

The court, therefore, finds that SFA must produce electronic versions of e-mail, documents, databases and spreadsheets requested by UCB that fall within the scope of Fed.R.Civ.P. 26. SFA shall produce to UCB the requested electronic information within thirty (30) days of the date of this Order.

### 4. Documents relied upon by Turgut Selbasti.

The last category of documents UCB seeks to obtain in the instant motion relate to Mr. Turgut Selbasti, an employee of SFT. In particular, UCB seeks production of the following items:

a. Disclosures required by Fed.R.Civ.P. 26(a)(2)(B);

b. Documents and supporting materials considered by Mr. Selbasti in formulating his opinions related to the polypropylene at issue; and

c. Letters from Mr. Palmer, counsel for SFA, and Mr. Basel to Mr. Selbasti requesting that he prepare his opinion letter.[43]

The court will examine each of the defendant's requests in order.

---

**39.** Fed.R.Civ.P. 26 advisory committee's notes, 1993 amendments (emphasis added).

**40.** *Kleiner v. Burns*, 2000 WL 1909470, *4, 2000 U.S. Dist. LEXIS 21850, *12 (D.Kan. Dec. 15, 2000) (The court in *Kleiner* did not intend the list to be exhaustive); *citing* Hon. Shira A. Scheindlin and Jeffrey Rabkin, *Electronic Discovery in Federal Civil Litigation: Is Rule 34 Up To The Task?*, 41 B.C. L.Rev. 327, 333 (2000).

**41.** *Kleiner*, 2000 WL 1909470 *4, 2000 U.S. Dist. LEXIS *12; *see also Zhou v. Pittsburg State University*, 2003 WL 1905988, *2, 2003 U.S. Dist. LEXIS 6398, *5–6 (D.Kan. Feb. 5, 2003).

**42.** 2002 WL 1071932, *3 (D.Kan.2002) (citation omitted).

**43.** UCB Film's Memorandum in Support of its Motion to Compel (Doc. 44) and UCB Film's Reply Memorandum in Support of its Motion to Compel. (Doc. 57).

### a. Fed.R.Civ.P. 26(a)(2)(B) Disclosures.

■ Mr. Selbasti is the Technical Director for Super Film Turkey responsible, among other things, for managing SFT's departments for research and development, quality control, process control, and technical advice. SFA designated Mr. Selbasti as an expert in this case.[44] Because of this designation, UCB seeks to compel disclosures required from an expert witness under Fed.R.Civ.P. 26(a)(2)(B).

In its response to defendant's motion to compel, SFA argues that, despite its earlier designation of Mr. Selbasti as an expert witness, he is actually a fact witness and, therefore Fed.R.Civ.P. 26(a)(2)(B) does not apply.[45]

When a party designates a witness for the purpose of providing an expert opinion for use in litigation, disclosure requirements of Fed.R.Civ.P. 26(a)(2)(B) apply. Under Fed. R.Civ.P. 26(a)(2)(B), the disclosure of an expert witness must

be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The extensive, mandatory requirements of Fed.R.Civ.P. 26(a)(2)(B) apply only to expert witnesses and do not apply to fact witnesses. As noted above, SFA filed an expert designation under Rule 26(a)(2) and noted that "Mr. Selbasti is employed by Plaintiff [SFA]. Mr. Selbasti's report, Curriculum Vitae, and a listing of the cases in which he has testified are attached to counsel's copy of this disclosure."[46] Pursuant to Fed.R.Civ.P. 26(a)(2)(B), an employee of a party who regularly provides expert testimony is subject to that rule's disclosure requirements.[47] In its reply, UCB states that based on SFA's disclosure, it understood that Mr. Selbasti was "an 'employee of the party' and that his 'duties as an employee of the party regularly involve giving expert testimony.'"[48] When SFA did not provide the complete Rule 26(a)(2)(B) disclosures for Mr. Selbasti, UCB objected to his designation as an expert. In response to that objection, SFA stated that Mr. Selbasti was an "employee of a *related* company" not retained or specially employed to provide expert testimony; nor was Mr. Selbasti "regularly involved in giving expert testimony."[49] Subsequent to this exchange, SFA has declared that Mr. Selbasti's employer, SFT, is a company wholly unrelated to SFA. Based on this new position, UCB claims that Mr. Selbasti qualifies as an expert who was "specially employed" or "retained" by SFA, thereby requiring Fed. R.Civ.P. 26(a)(2)(B) disclosures. Asserting that such disclosures are not required, SFA *now* argues that Mr. Selbasti is a "fact witness" who will present expert testimony based upon his investigation of the alleged defects on behalf of SFT prior to this litigation, and, therefore, Fed.R.Civ.P. 26(a)(2)(B) does not apply.

44. Plaintiff's Rule 26(a)(2) Expert Witness Disclosure, Exhibit D to defendant's Reply Memorandum in Support of its Motion to Compel (Doc. 57); *see also* Plaintiff's Final Witness and Exhibit List, Exhibit E to defendant's Reply Memorandum in Support of its Motion to Compel. (Doc. 57).

45. Furthermore, SFA states that the documents requested by UCB with respect to Mr. Selbasti's testimony are in the possession, custody or control of SFT and, therefore, are not available for production by SFA.

46. Plaintiff's Rule 26(a)(2) Expert Witness Disclosure, Exhibit D to defendant's Reply Memorandum in Support of its Motion to Compel. (Doc. 57).

47. Fed.R.Civ.P. 26(a)(2)(B).

48. Defendant's Reply Memorandum in Support of its Motion to Compel, p. 14. (Doc. 57).

49. Defendant's Memorandum in Support of its Motion to Compel, Exhibit 15. (Doc. 44) (emphasis added).

The court is perplexed by the continuing change in the plaintiff's description of Mr. Selbasti's role in this litigation. SFA designated Mr. Selbasti as an expert "employed by the Plaintiff." SFA's counsel requested that Mr. Selbasti supply a letter regarding his opinions about the polypropylene at issue and a list of his qualifications. Mr. Selbasti provided a letter explaining his education and professional background.[50] At no point did the plaintiff attempt to withdraw the expert witness designation for Mr. Selbasti. In its response to defendant's motion to compel, plaintiff states that it designated Mr. Selbasti as an expert "out of an abundance of caution ... in order to preserve those opinions for this case."[51]

The court is not satisfied with the plaintiff's explanation. The plaintiff designated Mr. Selbasti as an expert to preserve its right to call him as expert at trial. Based on the court's review of the documents submitted in support of and in opposition to the motion to compel, it appears that the plaintiff intends to call Mr. Selbasti as an expert at trial, in which case the defendant would be entitled to attempt to explain and rebut Mr. Selbasti's testimony. Rule 26 requirements exist to enable litigants to best prepare their side for trial. These requirements are not voluntary. As a result of Mr. Selbasti's designation as an expert, UCB is entitled to the disclosures required by Fed.R.Civ.P. 26(a)(2)(B). SFA shall provide to UCB the disclosures set forth in Fed.R.Civ.P. 26(a)(2)(B) for Mr. Selbasti within thirty (30) days of the date of this Order.

### b. Documents and Materials Relied Upon by Mr. Selbasti.

In addition to the Rule 26(a)(2)(B) disclosures, UCB seeks to compel production of documents and materials relied upon by Mr. Selbasti in formulating his expert opinions. In particular, UCB seeks production of the following items:

- Samples of polypropylene shipments made to UCB Films;
- Process conditions report;
- Production reports;
- Raw materials report;
- Certificates of analysis;
- Incoming Raw Material Inspection Form; and
- Log sheets.[52]

Before the court can address the question of whether SFA must produce documents and materials relied on by Mr. Selbasti to reach his opinions regarding polypropylene at issue, it must address the procedural dispute that has arisen with respect to these documents and materials. The plaintiff questions the procedural propriety of the motion to compel production of documents and materials relied upon by Mr. Selbasti.[53]

In its response to UCB's motion to compel, the plaintiff claims that, prior to filing this motion, UCB has not made any requests for production of materials reviewed by Mr. Selbasti.[54] Because Rule 26(a)(2)(B) deals solely with disclosures, SFA claims that the duty to produce supporting expert materials does not arise until an actual request for produc-

---

**50.** Exhibit H to defendant's Reply Memorandum in Support of its Motion to Compel. (Doc. 57).

**51.** Plaintiff's Response and Memorandum in Opposition to Defendant's Motion to Compel, p. 11. (Doc. 54).

**52.** UCB Film's Memorandum in Support of its Motion to Compel, p. 22 (Doc. 44) (The documents in question were identified during Mr. Selbasti's deposition).

**53.** While the court has been unable to identify the source of all the production requests discussed in the preceding sections of this Order, there appears to be no dispute regarding the

propriety of the motion to compel with respect to documents in the possession and control of SFA, documents in the possession of SFT, electronic versions of documents, and letters from Messrs. Palmer and Basel to Mr. Selbasti requesting that he prepare an opinion letter. The plaintiff's only objection regarding the procedural appropriateness of the instant motion to compel is for the documents and materials relied upon by Mr. Selbasti in formulating his opinions, identified on page 22 of UCB Film's Memorandum in Support of its Motion to Compel.

**54.** Plaintiff's Response and Memorandum in Opposition to Defendant's Motion to Compel, p. 10, n. 1 (Doc. 54).

tion has been made.[55] SFA claims that no such request was ever made. UCB fails to address this point in its reply.

In its Memorandum in Support of its Motion to Compel, UCB lists the documents and materials relied upon by Mr. Selbasti and cites to his deposition transcript as the source of the request. The court has reviewed the deposition transcript at issue and finds that the only item actually requested by UCB during Mr. Selbasti's deposition was the "[s]amples of polypropylene shipments made to UCB Films."[56] All other items were mentioned in the deposition but never specifically requested. Because UCB has not provided the court with either a copy of the notice of Mr. Selbasti's deposition, a subpoena duces tecum, or any other document showing that a more expansive request for production has been made, it is unclear whether any other documents identified by UCB were ever requested. UCB's failure to address SFA's argument in its reply leads the court to conclude that no request for production of such documents pursuant to Fed.R.Civ.P. 34 was made prior to the filing of the motion to compel. Therefore, with the exception of the samples of polypropylene shipments made to UCB Films, defendant's motion to compel production of documents and materials relied upon by Mr. Selbasti, as identified in UCB's Memorandum in Support of its Motion to Compel, is denied at this time.

SFA shall produce to UCB samples of polypropylene shipments made to UCB Films within thirty (30) days of the date of this Order. SFA is not required to produce to UCB other documents and materials identified during Mr. Selbasti's deposition and described in the defendant's Memorandum in Support of its Motion to Compel, including the process conditions report, the production reports, raw materials report, certificates of analysis, incoming raw material inspection form, and log sheets, at this time.

### c. Messrs. Palmer and Basel's Letters to Mr. Selbasti.

In addition to the documents used by Mr. Selbasti in formulating his opinion, UCB seeks to compel production of letters from Mr. Palmer, counsel for SFA, and Mr. Basel to Mr. Selbasti requesting that he prepare his opinion letter. SFA does not contend that these letters were not requested by UCB prior to the filing of the instant motion to compel, nor does SFA lodge any specific objection to their production. Therefore, the court hereby orders SFA to produce to UCB the letters from Messrs. Palmer and Basel to Mr. Selbasti requesting that he prepare his opinion letter within thirty (30) days of the date of this Order.

**IT IS THEREFORE ORDERED** that defendant UCB Film's Motion to Compel certain documents and materials from plaintiff Super Film America (Doc. 43) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that SFA shall produce to UCB within thirty (30) days of the date of this Order the following documents:

a) The documents in the possession and control of SFA described on page 6 of this Order and listed on pages 4 and 5 of UCB Film's Reply Memorandum in Support of its Motion to Compel. To the extent the documents in question are no longer in SFA's possession, custody, or control, SFA is hereby directed to explain, in detail and in writing, to defendant UCB the disposition of these documents;

b) The documents in the possession of SFT and control of SFA described on page 7 of this Order and listed on pages 7 and 8 of UCB Film's Reply Memorandum in Support of its Motion to Compel;

c) Unredacted copies of the manufacturing documents described on page 14 of this Order and pages 8 through 10 of UCB Film's Reply Memorandum in Support of its Motion to Compel;

55. *Id.*

56. Videotaped Deposition of Turgut Selbasti at 164:22–170:5, Exhibit 14 to UCB Film's Memorandum in Support of its Motion to Compel. (Doc. 44).

d) Electronic versions of e-mail, documents, databases and spreadsheets requested by UCB that fall within the scope of Fed.R.Civ.P. 26;

e) The disclosures set forth in Fed. R.Civ.P. 26(a)(2)(B) for Mr. Selbasti;

f) The samples of polypropylene shipments made to UCB Films. SFA is not required to produce to UCB other documents and materials identified during Mr. Selbasti's deposition and described in the defendant's Memorandum in Support of its Motion to Compel, including the process conditions report, the production reports, raw materials report, certificates of analysis, incoming raw material inspection form, and log sheets, at this time;

g) The letters from Messrs. Palmer and Basel to Mr. Selbasti requesting that he prepare his opinion letter.

**IT IS FURTHER ORDERED** that with respect to any document or group of documents, including electronic documents, which is not produced as directed above, SFA shall show cause to the Court within thirty (30) days of this Order why it did not fully comply with this Order and shall specifically describe the efforts it made to comply with this Order.